IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| BETTIE COLBURN, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action Number |
| | ) 00-C-2108-W |
| G.M. ROBERTS, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This is a lawsuit in which Plaintiff Bettie Colburn ("Colburn") alleges violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12111-12117, violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, violation of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794, sexual harassment, constructive discharge, assault and battery, breach of contract, and negligent supervision/retention. The case is brought against the Alabama Department of Transportation ("ADOT"), the State of Alabama Personnel Department, and twelve individuals in both their official and individual capacities. The Defendants have filed summary judgment and other motions, including motions to dismiss Plaintiff's First Amended Complaint. Plaintiff has moved to reinstate the previously-dismissed individual defendants in their official and individual capacities. (Doc. 61).

On September 30, 2002, the Court entered various orders on the pending motions. It denied the Defendants' Motion to Dismiss the Amended Complaint (Doc. 45); denied

Plaintiff's Motion to Reinstate the Individual Defendants in their Official and Individual Capacity (Doc. 60); and it granted ADOT's Motion to Deny Plaintiff's Motion to Reinstate Individual Defendants in Their Official and Individual Capacities (Doc. 71).

This Memorandum Opinion explains the bases of the Court's orders; and in some instances, it mandates a clarification or change in some of the orders of September 30, 2002.

## I. The Undisputed Facts

Colburn commenced her employment with ADOT on April 5, 1993 as a Clerk Typist I in the Project Engineer's office. She was assigned to the Project Engineers office in Greensboro, Alabama, which was located on the same grounds as the District Office. She was later classified as an Administrative Support Assistant I, and transferred to the District Office. Plaintiff was employed by ADOT for approximately six and one half years.

In 1997, Plaintiff embarked on a treatment program for her serious medical problems of nausea, vertigo, and stuffiness of the ears. Eventually, she was diagnosed by her physician, Carl M. Nechtman, M.D. ("Dr. Nechtman"), as having Meniere's disease, "a sensory neuro-hearing loss in the left ear and tinnitus."[1] Both Plaintiff and Dr. Nechtman promptly informed Colburn's supervisor at ADOT, Don Morris ("Morris"), of Plaintiff's condition.

Dr. Nechtman explained that Plaintiff's medical condition could be aggravated by normal noises in the workplace such as constant telephone ringing, use of noisy office machines, use of two-way radios, and background sounds. To partially accommodate her condition, Dr.

---

[1] Meniere's Disease is a disorder characterized by recurrent prostrating vertigo, sensory hearing loss, tinnitus, and a feeling of fullness in the ear associated with generalized dilation of the membranous labyrinth.

Nechtman recommended that ADOT provide Colburn with a private office and a computer, rather than a typewriter. At Defendants' request, Dr. Nechtman completed a job functions checklist, which explained the job functions that Plaintiff could perform.

Notwithstanding the recommendation and other pertinent information, Defendants refused to make reasonable accommodations for Plaintiff's disability. It could have accommodated this request as an empty office was available in ADOT's Greensboro District Office.

In September 1999, Plaintiff requested leave under the FMLA and submitted documentation of her medical conditions. On October 1, 1999, Dr. Nechtman sent a letter to ADOT confirming that Plaintiff needed medical leave so that she could engage in therapy associated with controlling her environment. Dr. Nechtman was of the opinion that Plaintiff required a minimum of six to eight weeks of leave.

ADOT denied Plaintiff's request for FMLA leave.

Plaintiff was subjected to a disability and sexually hostile work environment from the time she informed Wayne Osburn, ADOT's Fifth Division Acting District Engineer, of her disability. Osburn continuously made inappropriate comments concerning Plaintiff's hearing problem. In addition, Plaintiff was repeatedly subjected to jokes and comments of a sexual nature.

During the time that Plaintiff was assigned to the Project Engineers office, she was periodically subjected to sexual jokes and distasteful remarks from her co-workers Rob Stringfellow ("Stringfellow") and William Hoggle ("Hoggle"). Neither Stringfellow nor Hoggle worked in the same office as Plaintiff once she was transferred to the District Office. However,

their job duties required the two to periodically come into that office.

In the winter of 1997, as Plaintiff was walking past Hoggle, he put his hand up Plaintiff's dress and touched her genitalia. (Colburn Dep., p. 74-76; 285-86). Hoggle's unwanted touching of Plaintiff caused her to jump in shock. The unwanted experience was very upsetting to her; she "was very distressful, distraught" and she "forgot what [she] was doing the rest of the evening." (*Id.*, p. 287). On the day of the incident, Plaintiff reported it to her supervisor, Don Morris. The next day, her co-workers discovered her crying on the job about the incident. (*Id.*, p.79 ).

No disciplinary or other corrective action was taken by ADOT against Hoggle for his sexual assault of Plaintiff.

In May 1998, Plaintiff requested Stringfellow's assistance in repairing her computer. She describes the incident:

> "He came around to my desk over my shoulder and was looking at the computer with his hand placed on my back. And I says, 'Do you think you can get me out of this or get it to work?' And before I knew it, his hand was on the - - his hand was on my back. He had unsnapped my bra. I jumped up. He says - - and I jumped up getting out the little spaced area. And he says to me, 'Let me play with them..' I ran to the – I says, 'Rob, shut up.' And I ran to the bathroom and locked the door and stayed there until I heard him leave and somebody else came in, a voice that I - - people coming in."

(*Id.*, p. 96-97, 271-75). Plaintiff was "scared to death" by Stringfellow's assault.

The actions of Hoggle and Stringfellow were extremely distressing to Colburn. For the remainder of her tenure with ADOT, Plaintiff was in constant fear that she would be physically assaulted by either Hoggle or Stringfellow, or both.

On July 27, 1999, Plaintiff filed a departmental grievance, alleging that ADOT failed to comply with the ADA. On September 16, 1999, Plaintiff filed a Notice of Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

When ADOT failed to take any action with respect to Colburn's request for accommodations to enable her to work with her hearing disability, refused to grant her request for medical leave, and failed to correct the physically threatening and emotionally stressful hostile work environment to which she was subjected, Colburn felt that she had no alternative except to resign her employment with ADOT. She resigned in October of 1999.

ADOT receives federal funds for the construction and improvement of interstate highways. It has been on notice since 1986 that its receipt of federal funds for that purpose is conditioned on waiver of the sovereign immunity of the State and certain of its agencies and departments, including without limitation ADOT.

Plaintiff never filed a sexual harassment charge against the Defendants with the EEOC.

On July 28, 2000, Plaintiff filed this action.

## II. Controlling Legal Principles

The law governing summary judgment is well settled. Summary judgment is appropriate when the movant demonstrates that no genuine issue exists as to any material facts and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Once the movant has met her burden of establishing the lack of genuine issue as to any material facts, the nonmoving party

must come forward with significant, probative evidence demonstrating the existence of a triable issue of material fact. *See Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). The court must view the facts in a light favorable to the nonmoving party.

Similarly, the law governing motions to dismiss is clear. A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted only when, accepting all of the allegations of the complaint as true and giving Plaintiff the benefit of every reasonable inference that may be drawn therefrom, it appears beyond doubt that the plaintiff can prove no set of facts in support of his allegations which would entitle him to relief. *White v. Lemacks*, 183 F.3d 1253, 1255 (11th Cir. 1999); *Long v. Satz*, 181 F.3d 1275, 1278 (11th Cir. 1999).

### A. The ADA and FMLA Claims

Since this case was argued, the United States Supreme Court has decided *Board of Trustees of the University of Alabama v. Garrett* ("*Garrett II*"), 121 S. Ct. 955 (2001), in which it held that the Eleventh Amendment immunizes states from liability violation of the ADA.

The Eleventh Circuit has since held that the Eleventh Amendment immunizes states from liability for violation of FMLA. Suits in federal court by state employees to recover money damages by reason of the state's failure to comply with the ADA are barred by the Eleventh Amendment.

### B. The Rehabilitation Act Claim

The Rehab Act prohibits government agencies from failing to make a reasonable accommodation for an otherwise qualified individual with a disability. 29 U.S.C. § 794; 45

C.F.R § 84.12; *School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123 (1987).

### 1) Has Eleventh Amendment Immunity Been Waived?

It is unsettled in this Circuit whether the Defendants are immune from suit under the Rehab Act.

The 1986 Amendments to the Rehab Act provide that: "A State shall not be immune under the Eleventh Amendment to the Constitution of the United States from suit in Federal Court for a violation of Section 504 of the Rehabilitation Act of 1973 . . . or the provisions of any other federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a)(1). The Amendment was a response to the Supreme Court's decision in *Atascadaro State Hospital v. Scanlon,* 473 U.S. 234 (1985), in which the Court found the previous language of Section 504 of the Rehab Act not to have evinced a sufficiently clear intent on the part of Congress to condition the receipt of federal funds on waiver of Eleventh Amendment immunity.

After reversal by the Supreme Court on the ADA claim in *Garrett*, the Eleventh Circuit remanded the case to the district court for a determination of whether the state defendants had voluntarily waived their Eleventh Amendment immunity by their receipt of federal financial assistance conditioned upon such a waiver. *Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees,* 276 F.3d 1227 (11th Cir. 2001). On remand, the district court held that the State of Alabama did not knowingly waive its sovereign immunity when it accepted federal program funds, in view of community standards of fairness. *Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees,* 223 F. Supp. 2d 1244 (N.D.Ala. 2002).

The most recent *Garrett* opinion cites two circuits in support of its reasoning. *See Garcia v. S.U.N.Y. Health Services Center,* 280 F.3d 98 (2d Cir. 2001); *Reickenbacker v. Foster,* 274 F.3d 974 (5th Cir. 2001).

On the other hand, three circuits have concluded that state agencies which accept federal funds waive sovereign immunity from suit for violation of the Rehab Act. *See, e.g., Carten v. Kent State University,* 282 F.3d 391 (6th Cir. 2002); *Jim C. v. United States,* 235 F.3d 1079 (8th Cir. 2000)(en banc); *Douglas v. California Dept. of Youth Authority,* 285 F.3d 1226 (9th Cir. 2002); *Vinson v. Thomas,* 288 F.3d 1145 (9th Cir. 2002); *Lovell v. Chandler,* 303 F.3d 1039 (9th Cir. 2002); and *Koslow v. Commonwealth of Pennsylvania,* 302 F.3d 161 (3d Cir. 2002)

This judge finds persuasive the Third Circuit's approach. In *Koslow*, that Circuit concluded that, under the statutory definitions in the Rehab Act, the state as a whole cannot be a "program or activity" under Section 504. The *Koslow* Court followed the Eighth Circuit's logic in *Jim C.*, noting that if the entire state government were subject to Section 504 whenever one of its components received federal funds, subsection (b)(1)(B) would be redundant. However, State agencies or departments which receive federal funds are covered under the relevant statutory definition. *Koslow*, 302 F.3d at 171 (citing 29 U.S.C. § 794(b)(1)(A)). Therefore, if a state accepts federal funds for a specific department or agency, it voluntarily waives sovereign immunity for Rehab Act claims, but only with respect to the department or agency receiving the funds. The State can limit its waiver of sovereign immunity by limiting the kinds of federal funds it will accept. Finally, the waiver of immunity, while limited to the particular agency or department of the state which received the federal monies, applies to "all

the operations" of the department or agency receiving the federal funds.

The Court concludes that by virtue of its receipt of federal highway funds, the State of Alabama has knowingly and intentionally waived its sovereign immunity to claims against ADOT for violation of the Rehab Act.

### 2. Legal Requirements for a Rehab Claim

To establish a *prima facie* case under the Rehab Act, a plaintiff must demonstrate that: 1) she is disabled; 2) she is a qualified individual; and 3) her employer failed to make reasonable accommodations. *See Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).

Whether an individual has a disability within the meaning of the Rehab Act turns on determination of whether the individual has:

> (1) a physical or mental impairment that substantially limits one or more of such person's major life activities;
> (2) a record of such impairment; or
> (3) is regarded as having such impairment

42 U.S.C. §12102.[2]

EEOC regulations establish major life activities as the basic activities that average persons can perform with little or no difficulty, "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the

---

[2] *Compare* 42 U.S.C. § 12102(2) and 29 C.F.R. § 1630.2(g) *with* 29 U.S.C. §706(8)(b). Congress intended that cases interpreting "disability" under the Rehabilitation Act be applicable to the ADA definition of "disability." S. Rep. No. 116, at 21-22.

employment positions that such individual holds or desires." 42 U.S.C. §12111(8); *see Sutton v. United Airlines, Inc.*, 527 U.S. 471, 478 (1999).

The ADA's reasonable accommodation requirement imposes an affirmative obligation on employers to accommodate persons with disabilities so that they may enjoy equal employment opportunities. The Rehab Act imposes a similar obligation. Simply stated, "an accommodation is any change in the work environment or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities." 29 C.F.R. § 1630.2(o). The accommodation duty "applies to all employment decisions, not simply to hiring and promotion decisions." 29 C.F.R. § 1630.9 App.

### C. The Constructive Discharge Claim

The Eleventh Circuit has set a high standard of proof for constructive discharge cases. A plaintiff seeking to establish that she was constructively discharged "must demonstrate that working conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.'" *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279 (11th Cir. 1999).

### D. The Assault and Battery Claims

"Under Alabama law, assault consists of an intentional, unlawful offer to touch a person coupled with the present ability to do so, such that words or action create a reasonable fear of imminent contact." *Morrow v. Auburn University at Montgomery*, 973 F. Supp. 1392, 1409 (M.D. Ala. 1997) (citing *Holcombe v. Whitaker*, 318 So. 2d 289, 294 (Ala. 1975). Summary judgment for the defendant is appropriate in an assault and battery case unless there is a "genuine

dispute whether the defendant's conduct was intended to create a 'reasonable or well-founded apprehension of imminent harm as to constitute an assault.'" *Morrow*, 973 F. Supp. at 1409. The Alabama Supreme Court has consistently held that "an actual injury to the body is not a necessary element of a civil assault and battery." *Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala. 1986); *see also Bennett v. State*, 567 Ala. App. 568, 571 (1976). Citing *Singer Sewing Machine Co. v. Methvin*, 184 Ala. 554, 561 (1913), the *Surrency* court opined:

> "The wrong here consists, not in the touching, so much as in the manner or spirit in which it is done, and the question of bodily pain is important only as affecting the damages. Thus, to lay hands on another in a hostile manner is battery, although no damage followed; but to touch another, merely to attract his attention is no battery and not unlawful. And to push gently against one in the endeavor to make any way through a crowd, is no battery; but to do so rudely and insolently is and may justify damages proportioned to the rudeness."

*Surrency*, 489 So. 2d at 1104.

### E. The Breach of Contract and Negligent Supervision/Retention Claims

Article I, § 14 of the Alabama Constitution of 1901 provides that "the State of Alabama shall never be made a defendant in any court of law or equity." This provision is broadly construed; it covers not only the State of Alabama but its agencies as well. *Lancaster v. Monroe County*, 116 F.3d 1419, 1430-31 (11th Cir.1997); *Larkins v. Dept. of Mental Health and Mental Retardation*, 806 So.2d 358 (Ala. 2001). The immunity extends to ADOT. *Ex parte Alabama Department of Transportation*, 764 So.2d 1263 (Ala. 2000).

### F. The Sexual Harassment Claim

To be actionable, a claim for sexual harassment must be preceded by the filing of charge

of sexual harassment with the EEOC within 180 days of the last act of sexual harassment.

### III. Conclusions

In light of *Garrett,* Defendant ADOT is entitled to judgment as a matter of law on Plaintiff's claims for violation of the ADA and the FMLA.

Genuinely disputed issues of material fact preclude summary judgment for Defendant ADOT on Plaintiff's claims under the Rehab Act, including her claim of constructive charge.

Likewise, genuinely disputed factual issues preclude summary judgment for Defendants Hoggle and Stringfellow on Plaintiff's assault and battery claims against them.

Because of the state constitutional bar, the Court must grant Defendant ADOT's motion to dismiss Plaintiff's state law claims of breach of contract and negligent training/retention.

Because of Plaintiff's failure to timely file a charge of sexual harassment with the EEOC, Defendant ADOT is entitled to summary judgment on the sexual harassment claim.

These conclusions will be embodied in a separate order.

Done this 12th day of May, 2003.

Chief United States District Judge
U.W. Clemon